# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **ROBERT G. SINGLEY and LINDA S. SINGLEY**<br>℅ DannLaw<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>Plaintiffs,<br><br>v.<br><br>**SELECT PORTFOLIO SERVICING, INC.,**<br>c/o Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Robert G. Singley and Linda S. Singley, through counsel, and for their *Complaint for Damages* against Defendant Select Portfolio Servicing, Inc. (the "Complaint") state as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Robert G. Singley and Linda S. Singley (collectively "Plaintiffs" or the "Singleys") are the owner of the real property and improvements located thereupon located at and commonly known as 10031 Menominee Drive, Cincinnati, Ohio 45251 (the "Home").

2. The Singleys currently occupy and maintain the Home as their primary, principal residence and have maintained the Home as such for all times relevant to the causes of action pleaded in these Counterclaims.

3. On or about October 25, 2002, the Singleys executed a Note in the amount of $117,000.00 with non-party Long Beach Mortgage Company (the "Note") and a mortgage on the

Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan"). *See*, a copy of the Loan documents, attached as **Exhibit 1**.

4. Select Portfolio Servicing, Inc. ("Defendant" or "SPS") is a foreign corporation formed under the laws of the state of Utah, licensed to do business in the state of Ohio, with its headquarters located in Salt Lake City, Utah.

5. SPS currently services the Loan on behalf of the current creditor, owner, and/or assignee of the Loan—an entity other than itself previously identified as and believed to be Deutsche Bank National Trust Company, as Trustee for registered Holders of Long Beach Mortgage Loan Trust 2003-1, Asset-Backed Certificates, Series 2003-1 (the "Trust").

6. SPS has serviced the Loan on behalf of, at the behest of, and as an agent of the Trust at all times relevant to this Complaint.

7. Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

8. This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, infra, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

9. Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

## SUMMARY OF CLAIMS

10. This action is filed to enforce statutory provisions of RESPA as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

11. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13. The Singleys assert claims for relief against SPS for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

14. SPS is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

15. The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

16. The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

17. The Loan is secured by the Home which is the Singleys' principal residence. 12 C.F.R. § 1024.30(c)(2).

18. SPS is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

19. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for

purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

20. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

21. The Singleys have a private right action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

22. The Singleys also assert statutory claims for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

23. The Singleys are each a "buyer" as defined by R.C.1322.01(H), as they are each an individual whose loan is serviced by a mortgage servicer, SPS.

24. SPS is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

25. SPS is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

## FACTUAL BACKGROUND

26. The Singleys allegedly became delinquent on their obligations pursuant to the Loan and the Trust initiated the instant foreclosure proceedings in the Court of Common Pleas for Hamilton County, Ohio, Case No. A 2202768 (the "Foreclosure") on or about July 29, 2022.

27. Beginning in August 2022, the Singleys, through counsel, submitted an application and began working with Save the Dream Ohio (STDO) to obtain Rescue Payment Assistance

allocated by the Departpartment of Treasury through the American Rescue Plan Act of 2021 (the "Application").

28. STDO is able to provide Rescue Payment Assistance to qualified individuals in an amount up to $25,000.00 for the purposes of reinstating those individuals' delinquent mortgage obligations.

29. On or about August 22, 2022, STDO determined that the Singleys met the criteria of income eligibility to receive Rescue Payment Assistance and SPS was advised of the same. *See*, a copy of a message from STDO, attached as **Exhibit 2**.

30. On or about September 8, 2022, STDO sent a message to the Singleys stating that:

> The amount needed to reinstate [the Loan] exceeds our current program limit of $25,000. Please contact your mortgage servicer for the exact overage amount. We may still be able to assist if we are provided proof from you that the balance is under the cap within 30 days from today's date. Your mortgage servicer must send us a new "V" (verification) record for $25,000 within 15 days or your application will be denied.

*See*, a copy of this message from STDO, attached as **Exhibit 3**.

31. Upon receiving said message from STDO, Karen Ortiz, a paralegal for DannLaw, Plaintiffs' counsel, contacted SPS to obtain the reinstatement amount to ascertain the "overage" per STDO's message.

32. SPS, however, informed Ms. Ortiz that the current reinstatement was $24,151.27, under the $25,000 cap and contrary to the message from STDO.

33. On or about September 9, 2022, SPS sent a reinstatement quote confirming that the current reinstatement amount, good through September 24, 2022, was $24,151.27 (the "Reinstatement"). *See*, a copy of the "Reinstatement", attached as **Exhibit 4**.

34. That same day, the Singleys, through counsel, sent the Reinstatement to STDO requesting that it be accepted as proof that the reinstatement balance for the Loan was below the $25,000.00 cap. *See*, a copy of this correspondence, attached as **Exhibit 5**.

35. On or about September 14, 2022, STDO sent a message to the Singleys stating that they had again been determined to be conditionally eligible to receive Rescue Payment Assistance, that SPS was advised of the same, and to allow time for SPS to respond. *See*, a copy of this message from STDO, attached as **Exhibit 6**.

36. As the Singleys had not heard word of any update from SPS or STDO regarding the Application and the Reinstatement, on or about December 16, 2022, the Singleys, through counsel, sent a notice of error to SPS via Certified Mail [Tracking No. 70151520000166374592] ("NOE #1") at its address designated for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). *See*, a copy of NOE #1, along with the Tracking Information for the same obtained from the USPS's website (www.usps.com), attached as **Exhibit 7**.

37. Through NOE #1, the Singleys alleged that SPS committed an error related to the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by failing to provide the necessary confirmation and verification to STDO per STDO's message from September 9, 2022 and confirming that the reinstatement as of the time of said message was less than the STDO cap of $25,000. *See*, Exhibit 7.

38. SPS received NOE #1 on or about December 20, 2022. *See*, Exhibit 7.

39. SPS sent correspondence dated December 22, 2022, acknowledging its receipt of NOE #1 .

40. On or about January 11, 2023, STDO again sent a message to the Singleys stating:

> [Y]ourr delinquency exceeds the [STDO] cap of $25,000. Please contact your mortgage servicer for the exact overage amount. We may still be able to assist if we are provided proof from you that the balance is under the cap within 30 days from today's date.

*See*, a copy of this message, attached as **Exhibit 8**.

41. SPS sent correspondence dated January 31, 2023, requesting an additional fifteen (15) business days to respond to NOE #1.

42. On or about February 22, 2023, SPS sent correspondence to the Singleys purportedly in response to NOE #1 (the "Response"). *See*, a copy of the Response, attached as **Exhibit 9**.

43. Through the Response, despite one of the headings in the Response referencing "Homeowner's Assistance Funding", SPS only provided information and explanations referencing a loss mitigation application from June 1, 2022 and a streamline application review, each of which were separate and apart from and unrelated to the Application and the allegations of error contained in NOE #1. *See*, Exhibits 7 and 9.

44. On or about March 8, 2023, the Singleys, through counsel, sent a notice of error to SPS via Certified Mail [Tracking No. 70221670000187526752] ("NOE #2") at the Designated Address. *See*, a copy of NOE #2, without enclosures, along with the Tracking Information for the same obtained from the USPS's website (www.usps.com), attached as **Exhibit 10**.

45. Through NOE #2, having not received a proper response to the errors alleged through NOE #1, the Singleys realleged anew the prior errors alleged through NOE #1 and additionally alleged that SPS committed a further error pursuant to 12 C.F.R. § 1024.35(b)(11) by failing to properly investigate and respond to the errors alleged through NOE #1. *See*, Exhibits 7, 9, and 10.

46. On information and belief, SPS failed to provide a proper reinstatement amount for the Loan to STDO in August and/or September 2022.

47. Upon STDO seeking to confirm the reinstatement amount per the Reinstatement that SPS sent to the Singleys, SPS failed to take any action until on or around January 11, 2023, when it informed STDO that the reinstatement at that point in time was greater than the $25,000 cap.

## IMPACT UPON AND DAMAGES SUFFERED BY THE SINGLEYS

48. SPS failed or refused to provide a proper reinstatement amount for the Loan to STDO in August and/or September 2022 and failed to take reasonably timely action to confirm their mistake and verify the proper reinstatement amount upon STDO's request and in response to NOE #1.

49. Had SPS provided an accurate reinstatement to STDO in August and/or September 2022, STDO would have provided sufficient funds to reinstate the Loan and, as the delinquency on the Loan would have been cured, the Foreclosure would have been dismissed.

50. Had SPS otherwise acted in a more timely manner to provide accurate reinstatement amounts prior to on or around January 11, 2023, less fees and charges related to the delinquency and the Foreclosure would have been imposed on and against the Loan, which would have made it easier for the Singleys to provide funds to bridge the gap to the $25,000.00 STDO limit.

51. SPS's improper actions caused the Singleys to suffer from actual damages including, but not limited to:

    a. The lost opportunity of receiving the $24,151.27 from STDO to reinstate the Loan in September 2022;

b. The lost opportunity to bring funds necessary to bridge the gap between the reinstatement amount and the $25,000,00 STDO limit without having to pay for fees and charges imposed against the Loan related to the delinquency and the Foreclosure including but not limited to additional late fees and attorneys' fees incurred by the Trust in prosecution of the Foreclosure;

c. Legal fees, costs, and expenses to submit NOE #1 and NOE #2, to SPS in a good faith attempt to amicably resolve this matter or to have SPS mitigate the harm caused to the Singleys to which the Singleys did not receive a proper or adequate response;

d. Legal fees and costs to submit the Reinstatement to STDO in an attempt to have SPS provide and/or otherwise confirm an accurate reinstatement amount under the $25,000.00 cap;

e. Improper fees and charges imposed on the Loan since SPS failed to provide an accurate reinstatement quote for the Loan to STDO—and the attempted collection of such fees—including default servicing related fees and attorneys' fees incurred by the Trust in further prosecution of the foreclosure for which the Singleys are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled;

f. Attorneys' fees, costs, and expenses incurred in defense of the Foreclosure, which, but for SPS's erroneous conduct, would have been dismissed; and,

g. Severe emotional distress driven by this wrongfully exacerbated and unnecessarily continued delinquency and by justified fear that such will lead to the foreclosure sale of the Singleys' Home unless the Singleys pay amounts and fees which are not

warranted, and despite the Singleys's payment of amounts actually due and owing, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY FAY

52. SPS's actions are part of a pattern and practice of behavior in violation of the Singleys's rights and in abdication and contravention of SPS's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

53. As of the filing of this Complaint, consumers nationwide have lodged at least Three Thousand Four Hundred Ninety-Nine (3,499) consumer complaints with the CFPB against SPS, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

## COUNT ONE:
## VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to properly respond to NOE #1)

54. The Singleys restate and incorporate all of the statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

55. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

56. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

57. A servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

58. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.
(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

59. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

60. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

61. NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 7.

62. SPS received NOE #1 at the Designated Address on or before December 20, 2022. *See*, Exhibit 7.

63. In relation to NOE #1 SPS did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) through the Response as it did not admit that the error occurred as alleged. *See*, Exhibits 7 and 9.

64. In relation to NOE #1, SPS did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) through the Response as it is clear that SPS did not perform a reasonable investigation into the errors alleged through NOE #1 as SPS did not address the errors alleged through NOE #1 and instead only provided information and explanations referencing a loss mitigation application from June 1, 2022 and a streamline application review, each of which were separate and apart from and unrelated to the Application and the allegations of error contained in NOE #1. *See*, Exhibits 7 and 9.

65. SPS's failure to timely and properly respond to NOE #1 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1 constitutes violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and caused the Singleys to suffer actual damages, as discussed, *supra*, including but not

limited to attorneys' fees, costs, and expenses in preparing and sending NOE #2 which would not have been necessary but for SPS's failure to properly respond to NOE #1. *See Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

66. Further, SPS's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused the Singleys' attorneys' fees and costs associated with the preparation of NOE #1 to metamorphose into damages. *See Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013); *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018) ("But other courts have held, and the Sixth Circuit has suggested, that a plaintiff can establish actual RESPA damages when the plaintiff incurred expenses submitting paperwork to a lender, but the lender 'ignored its statutory duties to adequately respond.'").

67. SPS's actions are part of a pattern and practice of behavior in conscious disregard for the Singleys' rights and in abdication of SPS's obligations under RESPA and Regulation X.

68. As a result of SPS's actions, SPS is liable to the Singleys for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

69. Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO:**
**VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.***

70. The Singleys restate and incorporate all of the statements and allegations contained in paragraphs 1 through 69 in their entirety, as if fully rewritten herein.

71. "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

72. SPS, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

73. SPS is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it multiple certificates of registration, License Nos. RM.500912.000, RM.500912.003-BR, RM.500912.004-BR, and RM.500912.005-BR.

74. The Singleys are each a buyer, as their Loan is serviced by SPS, a mortgage servicer. R.C. 1322.01(H).

75. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.* cannot "[e]ngage in conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(C).

76. SPS's conduct in, *inter alia*, failing to provide a proper reinstatement amount for the Loan to STDO in August and/or September 2022 and failed to take reasonably timely action to confirm their mistake and verify the proper reinstatement amount upon STDO's request and in response to NOE #1, constitute violations of R.C. 1322.40(C).

77. SPS's conduct caused the Singleys to suffer actual damages, as further described, *supra*.

78. As a result of SPS's conduct, SPS is liable to the Singleys for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

79. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

    (3) Act with reasonable skill, care, and diligence; [and]
    (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

80. A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

81. SPS's conduct in, *inter alia*, failing to provide a proper reinstatement amount for the Loan to STDO in August and/or September 2022 and failed to take reasonably timely action to confirm their mistake and verify the proper reinstatement amount upon STDO's request and in response to NOE #1, constitutes violations of R.C. 1322.45(A)(3)-(4).

82. As a result of SPS's conduct, SPS is liable to the Singleys for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Robert G. Singley and Linda S. Singley pray that this Court grant judgment against Defendant Select Portfolio Servicing, Inc. and award him the following:

A. Actual damages from Defendant Select Portfolio Servicing, Inc. in an amount to be determined at trial for the allegations contained in Counts One and Two;

B. An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Select Portfolio Servicing, Inc. for each violation of RESPA contained in Count One;

C. For punitive damages against Defendant Select Portfolio Servicing, Inc. as to Count Two;

D. For attorney's fees and costs as to Counts One and Two; and,

E. For such other relief which this Court may deem appropriate.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
Brian D. Flick (0081605)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Robert G. Singley and Linda S. Singley*

## JURY DEMAND

Plaintiffs Robert G. Singley and Linda S. Singley hereby respectfully demand a trial by jury on all such claims that may be so tried.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
Brian D. Flick (0081605)
**Dann Law**
*Counsel for Plaintiffs Robert G. Singley and Linda S. Singley*